Argued March 24, affirmed May 8, reconsideration denied June 14, petition for review denied September 8, 1978

## LANE COUNTY LOCAL GOVERNMENT BOUNDARY COMMISSION, *Appellant,*

*v.*

## CITY OF EUGENE et al, *Respondent.*

### (No. 77-1568, CA 8604)

578 P2d 473

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Frank W. Ostrander, Jr., Assistant Attorney General, Salem.

Richard Bryson, Eugene, argued the cause for respondent. With him on the brief were Calkins & Calkins, Johnson, Harrang & Mercer, and Bryson & Bryson, Eugene.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiff, Lane County Local Government Boundary Commission (Plaintiff or Boundary Commission), appeals from an adverse decree entered in its suit for injunctive relief against defendant City of Eugene acting by the Eugene Water and Electric Board (EWEB). The issue presented is whether, without the approval of the Boundary Commission, ORS 199.464(3) precludes the extension of water lines by EWEB to areas outside the city limits of the City of Eugene, but within three defined areas EWEB contracted to serve prior to the enactment of ORS 199.464(3), and within one area EWEB contracted to serve subsequent thereto, with plaintiff's approval. ORS 199.464(3) provides:

> "(3) Without the approval of a boundary commission, a city or district with territory in the jurisdiction of the commission shall not extend a water or sewer line extraterritorially to an extent not effected on October 5, 1973. Tentative plans for such extraterritorial extenstion shall be submitted to the boundary commission that has jurisdiction of the territory in which the extension is proposed. If the commission disapproves the plans, no further action may be taken."

In 1964, a major portion of the former Bethel Water District was annexed to the City of Eugene. Pursuant to ORS 222.550,[1] the remainder of the district dissolved, the assets and liabilities of the district were

---

[1] ORS 222.550 provides:

"When the greater portion of a water district including a domestic water supply corporation or a water control district is thus withdrawn, measured by the comparative assessed valuations of the portion withdrawn and the portion remaining in the district, the remainder of the district may dissolve in the manner provided for water districts. If dissolution is determined upon and the city agrees to furnish water or other facilities theretofore provided by the water district to the remainder of the district and if the city agrees to assume the liabilities of the district, then all assets of the district become the property of the city. A city to which the major portion of a water district has been annexed may make such agreement notwithstanding any charter or statute limitation."

acquired and assumed by the city, and the city contracted to continue to serve the remaining unannexed portion of the former district in the following terms:

"XI.

"Second Party agrees to continue to furnish service to all residences and businesses and to provide future expansion in the remaining portion of the Bethel Water District not presently annexed to the City of Eugene at the established water rates for customers outside the city."

In 1965, major portions of the Hawkins Hill Water Supply District and of the Hillcrest Water District were annexed to the city of Eugene, the districts were dissolved, and EWEB acquired the assets and assumed the liabilities of the former districts. EWEB agreed to provide service to the areas of those districts not annexed. The Hawkins Hill agreement provided:

"XI.

"Second Party agrees to continue to furnish service to all residences and businesses, if any, in the remaining portion of the Hawkins Hill Water Supply District not presently annexed to the City of Eugene at the established water rates for customers outside the city."

The Hillcrest contract provided:

"Second Party agrees to continue to furnish service to all residences and businesses, if any, in the territory comprising the Hillcrest Water District."

Lastly, in 1970, following the previous pattern the College Crest Water District was, in major portion, annexed by the City of Eugene; the assets and liabilities of the district were acquired and assumed by EWEB, and the district dissolved. By this time the legislative assembly had authorized boundary commissions designed to control the growth in areas adjacent to major metropolitan areas,[2] and the contract by which EWEB agreed to serve the remaining portion of the former district specifically referred to approval of the plaintiff:

---

[2]Oregon Laws 1969, ch 494; ORS ch 199.

"In recognition that all but 44 acres and six customers of the College Crest Water District have annexed to the City of Eugene, and that the Board of the College Crest Water District has passed a resolution to dissolve the District, the City of Eugene by and through the Eugene Water & Electric Board, in accordance with ORS 222.510 to 222.550, subject to approval of the Lane County Local Government Boundary Commission, agrees to:

"* * * * *

"(3) Serve the 44 acres and all future customers within the area from the EWEB system at the established rates and policies for outside city-service. There would, of course, be no property tax levy by EWEB."

We construe all of the contracts, though worded slightly differently, as requiring EWEB to fulfill the obligation of the former water districts in the remaining area of each district which was not annexed to the city. Such obligations were not limited to serving those already served, but also other property owners in those areas entitled to service from each of the former districts.

The Boundary Commission argues that because EWEB would extend water lines beyond the *city* boundaries any time it extended service within the area not annexed, even though that area is part of a former district covered by one of the contracts, it would be extending water lines "extraterritorially" within the meaning of ORS 199.464(3) requiring Boundary Commission approval. EWEB, on the other hand, argues that by virtue of its contractual obligations it has acquired "territory" for water service purposes, and that to extend water service within the defined boundaries of the former water districts is not an "extraterritorial" extension.

There is no doubt that if none of the annexations had taken place and the former water districts had remained as they were, each of the districts could now extend its services within the district without Boundary Commission approval. The same would be true if

each of the former districts had been annexed in its entirety by the city and included within EWEB. It is difficult to reach a different conclusion where, as here, a major portion of each district is annexed and a contractual obligation is assumed by EWEB to fulfill the obligations of the former district within the area not annexed, in exchange for acquiring all of the assets of the former district, including those located in the area not annexed.

Among the stated purposes of ORS ch 199 is the prevention of "illogical extensions of local government boundaries" and the assurance of "adequate quality and quantity of public services * * *." ORS 199.410(2). If that policy was not offended by the situation as it existed prior to the annexations and related contracts, and if the situation with respect to the extension of services within the described boundaries was not changed as a result of the annexations and related contracts, we fail to see how the policy is offended by those events.

The only one of the four annexations which occurred subsequent to the enactment of ORS ch 199 establishing local boundary commissions, including plaintiff (ORS 199.425(3)), was that relating to the College Crest Water District in 1970, and the contract entered into with respect to the area not annexed expressly provided that it was subject to approval of plaintiff. There is no contention that it was not approved; therefore, we assume that condition was met. We disagree with plaintiff's contention that the contractual language means the Boundary Commission must approve each "future customer" to be served; we construe the approval requirement to relate to the contract as a whole. As so construed, approval of the agreement carried with it plaintiff's approval of EWEB's agreement to serve the area not annexed "and all future customers within the area." It appears that the Boundary Commission in early 1970 agreed with our overall view of the arrangements and the policy of

ORS ch 199 as it applied to them, although plaintiff now disagrees.

We conclude that the extension of service within the defined boundaries of the former districts is not an "extraterritorial extension" thereof within the meaning of ORS 199.464(3).

Affirmed.