Argued May 17, affirmed September 6, 1978

EKLUND et ux, *Respondents,*

*v.*

CLACKAMAS COUNTY et al, *Defendants,*
PORTLAND METROPOLITAN AREA LOCAL
GOVERNMENT BOUNDARY COMMISSION et al,
*Appellants.*

(No. 76-10-27, CA 8549)

583 P2d 567

Al J. Laue, Solicitor General, Salem, argued the cause for appellants. With him on the brief were James A. Redden, Attorney General, and Kent B. Thurber, Assistant Attorney General, Salem.

Gary M. Bullock, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The Portland Metropolitan Area Local Government Boundary Commission (Boundary Commission) appeals a circuit court order granting an alternative writ of mandamus. The writ required the Boundary Commission and Donald Carlson, its executive officer, to approve extension of an existing domestic water system to petitioners' proposed housing development. The writ also ordered Clackamas County, the County Commissioners, the Director of Public Works and the Planning Director to grant final approval of petitioners' subdivision, subject to certain specified conditions, and to issue the requisite building permits when the conditions are met. Only the Boundary Commission and its executive director appeal.

The Boundary Commission filed a motion to quash, a demurrer, and a motion for summary judgment on the ground the circuit court lacked jurisdiction in a mandamus proceeding to review the Boundary Commission's order denying extension of the water system. All were denied and the denials are assigned as error. In addition, the Boundary Commission contends that if mandamus is proper, the court erred in finding petitioners had established a nonconforming use which entitled them to extend the water supply system without approval of the Boundary Commission.

Petitioners owned, since 1965, approximately 80 acres of land in Clackamas County. In 1968 and 1969 they cleared the land and in 1970 prepared a design plat for a housing development. The land at that time was zoned "R-30" which allowed construction of a single family residence on a minimum lot size of 30,000 square feet.

In 1972 petitioners obtained conditional approval of their preliminary subdivision plat from the Clackamas County Planning Department. The plat provided for 108 building lots. One of the conditions of final approval was that the State Health Division approve the water system for the entire development. In

[ 75 ]

November, 1972, the Health Division granted its approval of the submitted plans which provided for a well, a reservoir, pumps and water lines sufficient to adequately serve the projected 108 homes.

Although the original plans specified a single development, petitioners subsequently, for economic reasons, decided to complete the subdivision in four separate stages. Construction of the first three phases, consisting of 20 homes, has been completed and is not an issue in this case. The first three phases of the subdivision included building the complete water system capable of supplying water to the projected 108 homes. This included laying the main water supply line into the fourth phase of the housing development known as Mountain Shadows Estates No. 2. No construction, other than the water supply line connected to the water system, has been commenced on Mountain Shadows Estates No. 2. Use of the water system to serve this phase of the development is the subject of this appeal.

In 1973 the legislature created the Boundary Commission (ORS ch 199) and gave it authority to approve or disapprove extensions of private water supply systems. ORS 199.464(4). In February, 1974, petitioners obtained an extension of time from the county in which to comply with the conditions imposed for the final approval of the Mountain Shadows Estates No. 2 phase of the development. At this time a new condition was added to the preliminary approval that the extension of the water system had to be approved by the Boundary Commission. Another extension of time was granted in May, 1975, including the same condition. Final approval of the subdivision plat had been given for the first three phases, but only conditional approval for the fourth phase, Mountain Shadows Estates No. 2.

In August, 1974, the County Commissioners adopted the Clackamas County Comprehensive Plan. Under the Comprehensive Plan petitioners' land was

designated as agricultural. In December, 1976, petitioners' land was rezoned with one portion designated with a minimum lot size of 10 acres and the other portion with a minimum lot size of 20 acres. In granting final approval of the first three stages of the development, and conditional approval of the fourth, the county proceeded on the assumption that petitioners had a nonconforming use and a vested right to build the subdivision consistent with the previous "R-30" zone.

On October 10, 1975, petitioners requested approval of extension of the community water system in the subdivision from the Boundary Commission as required in the conditional approval of the subdivision plat. After two hearings the Boundary Commission entered an order on December 10, 1975, purporting to approve the existing water system in the first three stages, but disapproving the proposed extension of the system to Mountain Shadows Estates No. 2. In its order the Boundary Commission found the land underlying the proposed subdivision was designated as agricultural by the Clackamas County Comprehensive Plan and the CRAG Regional Land Use Plan, and that the soil composition placed the land in the category of agricultural land under LCDC Goal No. 3. The reason given for disapproving extension of the water system was that a subdivision could not be built on land designated as agricultural. Petitioners did not appeal the order but filed this mandamus action on October 4, 1976.

The Boundary Commission argues the court lacked jurisdiction to review its order because the exclusive jurisdiction to review Boundary Commission decisions is in the Court of Appeals, pursuant to ORS 183.482; *League of Women Voters v. Lane Co. Bndry Comm.,* 32 Or App 53, 573 P2d 1255, *rev pending* (1978). This argument must fail for two reasons.

The issue raised by petitioners is whether they have a vested right to build their subdivision based on a

[ 77 ]

nonconforming use. The primary jurisdiction to determine the existence of a nonconforming use lies in the circuit court. *Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976), *rev den* (1977). This issue could not have been determined by the Boundary Commission since it would have no jurisdiction to determine the existence of a nonconforming use. It follows that a judicial review of the Boundary Commission order under ORS 183.482 would not have afforded petitioners relief since review by this court would be limited to the record made before the Boundary Commission. The doctrine of exhaustion of administrative remedies is not so strict as to require a litigant to pursue a futile course of action.

■ The second reason, directly related to the first, for rejecting this argument is that this is an original proceeding to judicially determine if a nonconforming use exists and is not an appeal of the Boundary Commission's order. The nonconforming use issue was not litigated before the Boundary Commission because it was not the proper forum. If a decision on this issue is not and cannot be made there is nothing to appeal under ORS 183.482.

■ The Boundary Commission next contends mandamus will not lie because the approval sought for petitioners' water system is purely a discretionary decision. The Boundary Commission argues that, in making its decision, it must consider economic, demographic and sociological trends (ORS 199.464(1)) and the state-wide goals and guidelines of the Land Conservation and Development Commission, as well as the County Comprehensive Plan and the CRAG Regional Land Use Plan. ORS 197.190, 197.175 and 197.765. It follows, the argument continues, that consideration of these factors requires exercise of considerable discretion and is not merely a ministerial act which can be reached by mandamus.

The argument, however, misses the essential issue, which is whether petitioners have a vested right and

nonconforming use to build the subdivision and serve it by the existing water supply system; and secondly, if such right exists, whether the Boundary Commission can nevertheless deny its approval to extend the water system.

Legislation respecting zoning and subdivisions is committed to the jurisdiction of the local governing body; in this case, Clackamas County. ORS 215.050(1), 215.130. The zoning and subdivision ordinances are to comply with the local comprehensive plan (ORS 215.050(2)) and the comprehensive plan is to be consistent with the state-wide planning goals (ORS 215.050(3)). No zoning or subdivision ordinance may be retroactive, ORS 215.110(5). Nonconforming uses are also recognized by statute. ORS 215.130(4) provides:

> "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. * * *"

The Land Conservation and Development Commission recognized the authority of local governments over zoning. In its published Statewide Planning Goals and Guidelines, effective January 1, 1975, LCDC stated:

> "* * * Above all, guidelines are not intended to be a grant of power to the state to carry out zoning from the state level under the guise of guidelines. * * *" Goal 2, part III.

It follows that a nonconforming use continues in derogation of local zoning provisions, local comprehensive plans and state-wide goals.

The Boundary Commission's order denied extension of the water system on the sole ground that the subdivision was in violation of the County Comprehensive Plan, the LCDC goals and the CRAG Regional Land Use Plan. This was tantamount to zoning the property under the guise of applying the land use goals. The order would effectively prevent petitioners from capitalizing on vested right to build the subdivision and serve it from the community water

[ 79 ]

system which was in existence. We conclude the legislature did not intend to give the Boundary Commission such authority.

The water system was built to serve the entire subdivision and had been approved by the State Health Division prior to creation of the Boundary Commission in 1973. All equipment necessary to serve the residences to be built in Mountain Shadows Estates No. 2 was in operation. Only the lateral lines connecting the homes with the existing water main would have to be installed. One condition of approval by the State Health Division was that petitioners turn over the community water system to the homeowners once the subdivision was completed. At present there are twenty homes being served by the water supply system. These homeowners pay a monthly user fee, which, because of the limited number of users, does not pay the operating cost of the entire system. Petitioners incur an annual operating loss of approximately $5,500. The substance of petitioners' agreement to build a water system to serve 108 homes, as required by the State Health Department, was that the cost of operation would be borne by 108 not 20 homeowners. The water system is an integral and inseparable part of the subdivision. If petitioners have a vested right to build the subdivision, it includes a vested right to serve the constructed homes from the existing, integral community water system.

In essence, the system is in place pursuant to authority of the then relevant state agency, the Health Division. All that remains is connection of the homes to be built by installation of the necessary lateral lines. We do not interpret ORS 199.464(4) to require Boundary Commission approval of the connection lines to each new future customer to be served. *See Lane County v. City of Eugene,* 34 Or App 257, 578 P2d 473, *rev pending* (1978).

We conclude the approval of the Boundary Commission was not required to provide water service to the homes to be built in Mountain Shadows Estates No. 2.

Since our decision depends upon the existence of a nonconforming use and a right to continue with the subdivision, we must consider the Boundary Commission's final contention that petitioners have not established such use.

■■ The allowance of a nonconforming use applies not only to a use in existence but also to uses which are in various stages of development at the time the ordinance is enacted. *Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973). Whether the landowner has proceeded far enough with the proposed development to have acquired a vested right to continue is an issue of fact to be decided on a case by case basis. *Clackamas Co. v. Holmes, supra.*

■ The Supreme Court in *Holmes* identified four essential factors to be considered in assessing the evidence of a nonconforming use; (1) the ratio of prior expenditures to the total cost of the project, (2) the good faith of the landowner in making the prior expenditures, (3) whether the expenditures have any relationship to the completed project or could apply to various other uses of the land, and (4) the nature of the project, its location and ultimate cost. None of these factors is predominant; they are merely guidelines in assessing the evidence and deciding the issue.

■ Petitioners originally planned a single development but later began construction in four stages. Because it was planned as a single development petitioners expected to amortize the development costs over 108 residences. They expended $15,000 in clearing the land, $57,764 in constructing the water system and $83,000 for attorney fees and surveying and design costs. Eighty percent of the latter figure was allocated to the Mountain Shadows Estates No. 2. There is no evidence in the record respecting the projected ultimate cost, but the monies expended thus far are substantial. In addition, petitioners are incurring an annual loss of $5,500 for operation of the community water system.

Petitioners' good faith in making the expenditures is beyond question. They began the development consistent with the prior zoning ordinance and with the approval of the County Planning Division. The water system was constructed with the approval of the State Health Division to serve the entire projected development.

The expenditures made by petitioners have a direct relationship to the development. It is true that clearing of the land is consistent with its use for agricultural purposes; however, the water system was not consistent with an agricultural use. It was specifically designed and built to serve domestic water to 108 homes. The Boundary Commisssion contends the only improvement appurtenant to the land here at issue was the water main. However, the main water line is connected to and is an integral part of the water supply system designed to serve the entire subdivision. The acts of the petitioners went beyond mere preparation or contemplated use. They had actually constructed part of the development in reliance on the requisite governmental approval.

We conclude the court was correct in finding that petitioners had established a vested right to complete the project based on a nonconforming use. The Boundary Commission had no authority to approve or disapprove the water supply system and mandamus will not lie to require approval. The order of the court, directed to the county, required it to give final approval to the subdivision and issue building permits when petitioner had met all the conditions. This order was not appealed. One of the conditions was approval from the Boundary Commission. Since we hold the Boundary Commission approval was not required that condition must be regarded as unnecessary.

The order granting the alternative writ of mandamus directed to the Boundary Commission is reversed.

Affirmed.