Argued April 23, reversed September 17,
reconsideration denied October 25, petition
for review denied November ·13, 1979 (288 Or 81)

# WEBBER, et ux,
*Respondents,*
*v.*
# COUNTY OF CLACKAMAS, et al,
*Appellants.*
## (No. 77-11-319, CA 11947)

600 P2d 448

Michael E. Judd, Oregon City, argued the cause for appellants. With him on the briefs was Keith Kinsman, Clackamas County Counsel, Oregon City.

Earl H. Mickelsen, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

Plaintiffs initiated this declaratory judgment proceeding to obtain a declaration that they have established a nonconforming use giving them a vested right to develop their land at a density prohibited by the present Clackamas County Comprehensive Plan. The trial court found that plaintiffs had established the nonconforming use, and defendants appeal. We review de novo[1] and reverse.

Plaintiffs own approximately 127 acres of land in Clackamas County. Prior to the adoption of the Comprehensive Plan in 1974, plaintiffs drilled a well on their property, installed a pump, constructed a large reservoir tank and laid a water main along a public road which bisects their property. Plaintiffs spent approximately $110,000 to develop the water system, which was designed to serve approximately 250 houses. This development plan was consistent with the zoning ordinances, which allowed residential development at half-acre density subject to certain conditions not at issue here. When the county adopted the comprehensive plan in 1974, the permitted density of development decreased to one dwelling unit per five acres. The question is whether the construction of the water system prior to the adoption of the comprehensive plan is sufficient to give plaintiffs a vested right to continue development of their land at the half-acre density.

A landowner may acquire a vested right to continue a nonconforming use not only for uses actually in existence but also for uses which are in various stages of development at the time a more restrictive land use regulation is adopted. Whether a landowner has proceeded far enough with the proposed development to

---

[1] Because the declaration which plaintiffs sought is analogous to an injunction against the county's enforcement of the density controls in the comprehensive plan, this declaratory judgment proceeding is equitable in nature and we review de novo. *See Lindsey v. Dairyland Insurance Co.*, 278 Or 681, 688, 565 P2d 744 (1977).

acquire a vested right turns on the facts of each case. *Clackamas Co. v. Holmes*, 265 Or 193, 197, 508 P2d 190 (1973). Generally, nonconforming uses are not favored because, by definition, they detract from the effectiveness of comprehensive land use regulation. *Clackamas Co. v. Port. City Temple*, 13 Or App 459, 462, 511 P2d 412, *rev den* (1973). Accordingly, one who claims a nonconforming use bears the burden of proving the facts upon which the right to such a use is based. *See* 1 Anderson, The Law of Zoning, § 6.09 (1976).

■ In *Clackamas Co. v. Holmes*, 265 Or at 198-99, the Supreme Court set out the factors to be considered in determining whether a landowner has acquired a vested right to proceed with development of the project. The first factor is the ratio of expenses already incurred to the total cost of the project. The Court also listed several additional elements of the test:

> "* * * Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects." (Citations omitted.)

*See also Eklund v. Clackamas County,* 36 Or App 73, 81, 583 P2d 567 (1978).

### The Ratio Test

■ Here, plaintiffs invested approximately $110,000 between 1967 and 1973 to serve residential development of the 127 acres at half-acre density. Because plaintiffs intended to sell parcels of their property for development by others rather than construct the houses themselves, the record contains no estimate of the projected overall cost of the project. Consequently,

[154]

we cannot determine the precise ratio of the cost of the water system to the total development cost.[2] The difficulty of the so-called "ratio test" of *Holmes* is that it does not tell us which ratio is sufficiently great to justify a nonconforming use and which is not. Applying the ratio test here, we are able to say only that construction of 250 houses is obviously a multi-million dollar proposition, and that the ratio of prior expenditures to the total cost of the project is far less favorable to a vested right than the 1:14 ratio in *Holmes*, where the court found a vested right based on the prior expenditures plus other factors which weighed in favor of the nonconforming use. The ratio test does not favor plaintiffs.

## Good Faith

■ Plaintiffs' development expenditures were made in good faith. Defendants do not contend that plaintiffs had notice of the more restrictive density controls in the comprehensive plan before they constructed the water system. Good faith development supports a nonconforming use.

## Other Uses

■ ■ Plaintiffs also bear the burden of proving that the density restrictions in the comprehensive plan would deprive them of any opportunity to derive reasonable economic value from their investment. They must show not only that they will lose the anticipated return on their investment, but also that the water system is incompatible with alternative uses. Plaintiffs did not sustain their burden of proof on this question. Plaintiff John Webber testified that after

---

[2] Plaintiffs contend that because they intended to sell their land without making any additional improvements, their project was virtually completed. They argue that the ratio test should be applied to their total expenditures, rather than to the total cost of the intended residential development. This approach is untenable because an economically sound ratio of water system cost to homesites is higher than its ratio to developed lots, but either ratio is a part of the same economic algebra based on the projected price of the houses at the time of sale to consumers. There is no evidence here upon which we can make the appropriate economic findings.

the system was completed, he sold water to neighboring landowners, but he thereafter limited those sales because he wanted to conserve the remainder of the supply for development of his own property. He also testified that water is difficult to obtain and is at a premium in the area. Thus, plaintiffs have shown the existence of an alternative use for their water system consistent with the comprehensive plan: they can use some of the water to supply residential development of their property at the permitted five-acre density and sell at least some of the excess supply to their neighbors.

As defendants state in their brief:

"It may be that the plaintiffs would realize the largest profit from their well and their property if allowed to develop the land under the old, more intensive zoning, but that is not the issue here. The issue is whether the development of the water system has committed the plaintiffs to only one use of the land, or whether there are other reasonable alternatives. The issue is whether the water system 'could apply to various other uses of the land.' *Eklund v. Clackamas County, supra.* Clearly it could."

Although the alternative use (commercial sale of excess water) may not yield as large a profit as plaintiffs anticipated from the more intensive development, plaintiffs have not demonstrated that the lesser economic return of the alternative use is unreasonably low. The construction of the water system has not been proven to constitute an irreversible commitment to development of the half-acre density inasmuch as there is no proof of the absence of an economically reasonable alternative use of the improvement. Thus it has not been established that denial of a nonconforming use will be a taking of plaintiffs' investment.[3]

---

[3] In *Eklund v. Clackamas County*, 36 Or App at 81-82, we found that a nonconforming use had been established on the basis of construction of a water system plus other factors which are not present here. Plaintiffs correctly acknowledge in their brief that the proponent of the vested right in *Eklund* had proceeded further with development than plaintiffs did in

■ In sum, plaintiffs have not established a vested right to continue development of a nonconforming use, because their expenditures for construction of the water system do not constitute a major portion of the total cost of the project and because they did not establish an absence of economically reasonable alternative uses for the water system.

■ Finally, plaintiffs offer an alternative ground for affirming the judgment below. They contend that the text of the comprehensive plan actually designates their property as suburban, which allows development at half-acre density, rather than rural, which allows only five-acre density. The trial court did not reach this issue. The basis for plaintiffs' contention is the definitions of "suburban" and "rural" in the plan. Rural areas are defined in the plan text as "those areas having neither sanitary sewers nor public water." Suburban areas are "those outlying areas east and southeast of the Urban area that are generally served by public water." Since it is stipulated that plaintiffs' water system has been officially designated as a public utility, plaintiffs urge that their property cannot be rural under the definition quoted above. However, their land is not located east or southeast of the Urban area, so it does not fall within the definition of suburban land either. The ambiguity in applying the textual definitions of the two terms is resolved by the comprehensive plan map, which clearly designates plaintiffs' land as rural and hence subject to the five-acre density restriction.[4] We have no basis for resolving the textual ambiguity in the manner plaintiffs suggest.

Reversed.

----

this case. There, the water system in question was an integral part of a larger water system designed to serve a residential development of which a major portion had already been completed, and the system was not compatible with other uses.

[4] If any ambiguity remained, resolution of that ambiguity would be initially a matter for the county's interpretation. *Cf. Bienz v. City of Dayton,* 29 Or App 761, 776-77, 566 P2d 904 (1977).