Argued and submitted September 3, 1980, affirmed January 19,
reconsideration denied February 26,
petition for review denied April 21, 1981 (290 Or 853)

COOK et al,
*Appellants,*
*v.*
CLACKAMAS COUNTY et al,
*Respondents,*
*and*
EAGLE CREST MOBILE HOME PARK, INC.,
*Intervenor - Respondent.*

(No. 77-7-205, CA 16241)

622 P2d 1107

Gail L. Achterman, Portland, argued the cause for appellants. With her on the briefs were Robert E. Stacey, Jr., and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Robert B. Hopkins, Portland, argued the cause for intervenor - respondent Eagle Crest Mobile Home Park, Inc. With him on the brief were David N. Goulder, and Keane, Harper, Pearlman and Copeland, Portland.

No appearance for respondent Clackamas County et al.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiffs appeal from a judgment dismissing a mandamus action in which they sought to require Clackamas County, acting through its Board of County Commissioners and officers, to cancel building permits previously issued to intervenor, Eagle Crest Mobile Home Park, Inc., and to enjoin intervenor from completing construction of a mobile home park for which the permits were issued. The trial court held that intervenor had acquired a vested right in a use which did not conform to the county's Comprehensive Plan. We affirm.

At the outset, plaintiffs state that this is "an action for declaratory and injunctive relief," and, based upon that characterization of the proceeding, they contend that this court should review the record *de novo.* Clearly, that characterization of the proceedings is not correct. This dispute has had a long and rocky history; it stems from Clackamas County's having issued building permits to intervenor Eagle Crest Mobile Home Park, Inc. for an unzoned area development of an 81 unit mobile home park now claimed to be in violation of the county's Comprehensive Plan. The first attempt to review the county's action was by writ of review, which we held was not the proper way to determine the existence or nonexistence of a valid nonconforming use; primary jurisdiction to adjudicate that question was in the courts, not local governing bodies. *1,000 Friends of Oregon v. Clackamas County,* 29 Or App 617, 564 P2d 1080 (1977). We vacated the judgment and dismissed the appeal.

Thereafter, these plaintiffs filed their petition for writ of mandamus on July 15, 1977, and after numerous motions and demurrers, a second amended petition for writ of mandamus was filed, after which, on February 16, 1978, Eagle Crest sought, and was granted, leave to intervene; responsive pleadings were then filed by the defendants and intervenor. The defendant county, as an affirmative defense, alleged that prior to the effective date of its Comprehensive Plan, intervenor had established a nonconforming use and had a vested right to complete construction of its project, subject to the restrictions and conditions set forth by the county. Intervenor filed a similar answer, and also filed a cross-claim asking for a declaratory judgment

regarding the rights and duties of the defendants and the intervenor respecting the issuance of the building permits and declaring that intervenor had established a vested right to complete construction of the project. Plaintiffs' reply denied the affirmative defenses of both defendants and intervenor.

On the day set for trial, July 11, 1979, plaintiffs were granted leave to file their "Amended Alternative Writ of Mandamus and Complaint for Injunction," which added a second cause of action praying for injunctive relief restraining intervenor from constructing a mobile home park. It was in this posture that the case went to trial. The judgment of the trial court dismissed plaintiffs' last amended complaint without ruling on intervenor's cross complaint.

The pleadings show that the principal relief sought by plaintiffs was the issuance of a writ of mandamus requiring defendants to cancel the building permits theretofore issued to intervenor because those permits were issued in violation of the Comprehensive Plan and were therefore invalid. Those contentions necessarily involved a determination of whether intervenor had acquired vested rights in proceeding with its development as a nonconforming use. The additional request for injunctive relief was intended primarily as a basis for plaintiffs' obtaining a temporary injunction to prohibit intervenor from continuing construction pending the litigation on the mandamus action. That result was achieved by stipulation of the parties after plaintiffs filed a motion for a restraining order pursuant to ORS 32.020.[1]

---

[1] ORS 32.020 provides, in part:

"(1) An injunction may be allowed by the court, or judge thereof, at any time after the commencement of the suit and before decree. Before allowing the injunction, the court or judge shall require of the plaintiff an undertaking, with one or more sureties, to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same be wrongful or without sufficient cause."

"(2) In addition to the punishment provided for in subsection (1) of this section, the court or judge shall have power to constrain performance of any lawful order, judgment or decree of such court or judge, by imprisonment of the person failing or refusing to comply, until the order, judgment or decree has been complied with."

If plaintiffs had prevailed in the mandamus proceeding, the prayer for injunctive relief against intervenor would have been an appropriate incidental remedy, although not a necessary one. However, if plaintiffs did not prevail in the mandamus proceeding, it would be anomalous to hold that plaintiffs were entitled to injunctive relief restraining intervenor from continuing with construction authorized by building permits determined in the mandamus proceeding to have been properly issued.

■■    Accordingly, we treat the proceeding as one in mandamus, which is an action at law, or in the nature of a law action, ORS 34.240;[2] *Kirschbaum v. Abraham,* 267 Or 353, 355, 517 P2d 272 (1973). Our review, then, is limited to determining whether the findings of the trial court are supported by the evidence.

The problem in this case arises because in 1970, when intervenor[3] first contemplated the mobile home project, there was no Comprehensive Plan and there were no zoning problems involved with its proceeding with the project. Between 1970 and 1972, intervenor purchased 22.8 acres for the development of a mobile home park. A well was drilled, a pump and pump house were purchased and installed, mobile homes to be used as a recreation room and a manager's office were purchased and placed on the property, the site was cleared, some roadwork was done, other materials were purchased, and surveying and engineering studies were begun.

On August 8, 1974, Clackamas County adopted its Comprehensive Plan, under which the subject property was designated "rural," permitting one dwelling unit for each five acres. Nothwithstanding the adoption of the plan,

---

[2] ORS 34.240 provides:

"From the judgment of the circuit court or Oregon Tax Court, or judge thereof, refusing to allow a mandamus, or directing a peremptory mandamus, an appeal may be taken in like manner and with like effect as in an action."

[3] Intervenor was incorporated in 1974. Prior thereto, Mr. & Mrs. Pool purchased the property for the purpose of a mobile home park; they were the incorporators of intervenor, and at the time of incorporation, they conveyed the land to the corporation. For the sake of convenience, we treat the intervenor corporation as having been involved in the project from the time the project was conceived in 1970.

intervenor obtained several conditional approvals for various phases of the project from the Department of Environmental Quality and from the Department of Human Resources, Health Division. It was not until June of 1975 that intervenor was advised that its activities might be in violation of the county's Comprehensive Plan, notwithstanding the county's failure to effectuate the plan by enacting zoning ordinances, because of the Supreme Court's decision in *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975). At that time the county issued a stop work order on the ground that intervenor had to comply with the Comprehensive Plan. Intervenor then applied for, and was granted, an unzoned area development permit on the basis that its prior work on the project gave it a vested right to a nonconforming use. Shortly thereafter the litigation described earlier commenced. The question presented is whether intervenor had acquired such a vested right.

Whether a landowner has acquired a vested right to a nonconforming use rests on the application of the guidelines enunciated in *Clackamas County v. Holmes,* 265 Or 193, 508 P2d 190 (1973). In *Holmes,* the court said:

"* * * A nonconforming use is one which lawfully existed prior to the enactment of a zoning ordinance and which may be maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area.

"The allowance of nonconforming uses applies not only to those actually in existence but also to uses which are in various stages of development when the zoning ordinance is enacted. * * *

"* * * * *

"The courts and the text writers are agreed that in order for a landowner to have acquired a vested right to proceed with the construction, the commencement of the constuction must have been substantial, or substantial costs toward completion of the job must have been incurred." (Citations omitted.) 265 Or at 196-97.

The court went on to say that the so-called "ratio test" is only one of a number of factors to be considered. The court stated:

"The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the

ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects." (Citations omitted.) 265 Or at 198-99.

The trial court properly addressed each of the guidelines discussed in *Holmes,* and made findings of fact with respect to each of them, on the basis of which it reached the conclusion that intervenor had acquired a vested right in the nonconforming use. We conclude that the trial court's findings are complete and are supported by the evidence; they are set forth in the margin.[4]

---

[4] The trial court's findings and conclusions are as follows:

"After careful consideration of the record herein, the numerous exhibits, arguments and memoranda of counsel and applying to same the guidelines established by *Clackamas County vs. Holmes, et ux,* 265 OR 193, I have found and concluded as follows:

"RATIO

"Intervenor claims (Exhibit 10) total expenditures of $99,434.44 as of August 8, 1974. Of this sum I find the following to be allowable for ratio purposes:

| | |
|---|---|
| "Well and pump | $7,381.00 |
| Rec Room and manager's office | 5,053.46 |
| Engineering expense | 6,601.50 |
| Additional expense 1972-74 | $4,359.08 |
| Total | $23,395.04 |

"I have further found the estimated total cost of the project as of August 8, 1974 to be in the range of $300,000.00 to $350,000.00.

"The ratio between expenditures and project cost is determined, therefore, to be approximately 1 to 14. This relationship reflects a substantial expenditure by intervenor and is sufficiently similar to Holmes (1 to 14) so as to resolve the ratio aspect of the guidelines in favor of the intervenor.

"GOOD FAITH

"As of the date of the Comprehensive Plan, intervenor had been working for several years toward its ultimate goal of developing a mobile home park.

The record reflects a consistent effort on the part of intervenor throughout this period of time to accomplish its intended purpose and to comply fully with the various dictates of governmental agencies.

"The record does not substantiate a 'race to construct' or that intervenor had any notice or knowledge of the Comprehensive Plan or its import prior to incurring the aforementioned substantial expense.

"I find that intervenor has acted in good faith.

### "ACTION VS. PREPARATION

"Prior to August 8, 1974, the land was cleared, roads were laid out, soil was tested, sewer trenches were dug and a well was drilled. A pumphouse was constructed, electrical power was installed and concrete poured. Mobile homes were purchased, moved and affixed to the property. Recreation, office and storage buildings were established. Several sets of engineering plans were developed, all of which designed, in detail, the mobile home park layout.

"The foregoing, taken as a whole, rises above mere preparation or contemplated use.

### "TYPE OF EXPENDITURES

"The Court finds that the expenditures of the intervenor herein were, as a matter of fact, made in furtherance of intervenor's intention to establish a mobile home park and further finds that the bulk of such expenditures were made for purposes more consistent with mobile home park construction than other potential uses.

"Expenditures for the pump ($2,399.00) and well ($2,112.00), for instance, are most compatible with mobile home park development (points which plaintiffs appear to concede), and it is likewise apparent that engineering and design expenses ($6,601.50) are particularly connected with the use proposed.

"I find that the expenditures of intervenor are sufficiently related to the contemplated use.

### "KIND OF PROJECT AND LOCATION

"The project advanced by intervenor is not foreign to its locale. At least two other mobile home parks exist in the immediate vicinity and the location in question appears from the record to be well suited to the use in question.

### "CONCLUSION

"I have concluded from the foregoing, as did the Planning Commission and Board of Commissioners before me, that intervenor has established a non-conforming use by way of vested rights. In so concluding, I have taken the time of enactment of the Comprehensive Plan, August 8, 1974, as the critical point for this review inasmuch as I am of the belief that even at that juncture Holmes' guidelines favor intervenor.

"I feel compelled to say, however, that the status of intervenor's rights would be more realistically assessed by viewing matters much farther down the line. Unlike Holmes, there is no violation of a zoning ordinance here. Intervenor did not know or have any reason to know of the import of the Comprehensive Plan until *Baker v. City of Milwaukie,* 271 Or 500, was decided (April 1, 1975) and intervenor had no actual reason to believe that it was in any way affected by Baker until the summer of 1975. By then further substantial, good faith costs had been incurred, all with the acquiescence of

As indicated above, we do not review the record *de novo,* as plaintiffs would have us do, so there is no occasion for us to evaluate the evidence relating to each of the guidelines set forth in *Holmes.* However, plaintiffs place a major emphasis on their contention that the trial court misapplied the so-called "ratio test" because it included expenses attributable to soil testing, ground leveling, road grading and the production of engineering plans and architects drawings, some of which were not ultimately used. Their contention is that those expenses are not directly related to the completed project. It should be noted, first, that the trial court did not take into account the total expenditures claimed by intervenor of $99,434 in applying the "ratio test." Of the items which it did determine to be includable expenses, the only one which we believe to be questionable is that relating to engineering expenses. There is evidence that even though all of the engineering work performed was not used in the final analysis, at least parts of the various engineering work which was done did have utility in subsequent engineering work; at least the favorable inferences which might be drawn from that evidence would support the finding of the trial court that engineering expenses of $6,601.50 were incurred.

In *Eklund v. Clackamas County,* 36 Or App 73, 583 P2d 567 (1978), we considered costs incurred for clearing land, attorneys fees, surveying and design costs in applying the "ratio test." Those costs are analogous to those involved here. In any event, even if we were to exclude a portion of the $6,601.50 attributable to engineering expense by the trial court, the most that could be said is that the result of applying the "ratio test" would not be as favorable to the intervenor as the trial court found. But that test is only one of many, according to *Holmes.*

---

various agencies who apparently knew no more about Baker than did intervenor. The blind application of August 8, 1974 to the particular facts of this case seems patently artificial.

"In any event, for the reasons stated, I find for defendants and intervenor. The Amended Alternative Writ and Complaint shall be dismissed and a decree may be prepared by the prevailing parties consistent with this Opinion for entry of record in this case and case No. 79-6-158.

"* * * * *."

Plaintiffs also contend that the trial court erred in evaluating the type of expenditures made by the landowner (intervenor) in determining whether the landowner had acquired a vested right in a nonconforming use. Plaintiff relies on *Webber v. Clackamas County,* 42 Or App 151, 600 P2d 448 (1979), for the proposition that the court may only consider action and expenditures which irreversibly commit the property to its intended use. Although there is dictum[5] in *Webber* which would support plaintiffs' contention, it is just that — dictum; we said too much and now disapprove that language. On the facts, the *holding* in *Webber* is consistent with the Supreme Court's opinion in *Holmes.* The plaintiff had installed a water system with the intention of serving approximately 250 homes he intended to build on his 127 acres of land. He testified that after the system was completed, he sold water to neighboring landowners, although those sales were limited because he wanted to conserve the remaining supply for his own development. As we pointed out in *Webber,* the plaintiffs "have shown the existence of an alternative use for their water system consistent with the comprehensive plan: they can use some of the water to supply residential development of their property at the permitted five acre density and sell at least some of the excess supply to their neighbors." 42 Or App at 156.

There is no such showing here, and the trial court found that the bulk of the expenditures for the project "were made for purposes more consistent with mobile home park construction than any other potential uses" and that the "expenditures are sufficiently related to the contemplated use." Those findings are supported by the evidence.

A variation of the type of expenditure factor is that relating to whether intervenor's activity was mere preparation or related only to contemplated use. Although the question is a close one, we do not weigh the evidence. *Holmes* does not require actual construction, and we cannot

---

[5] That dictum is an overstatement which, if applied literally, would eliminate effectively the doctrine of nonconforming uses. We know of no circumstance where there is an irreversible commitment of real property to a particular use; the use can always be reversed and the property put to a different use if cost is not considered.

say that the evidence of intervenor's pursuit of this development for over four years does not support the trial court's findings.

■ Plaintiffs' remaining contention, not involving a weighing of evidence, is that the trial court should not have considered evidence that there are two other mobile home parks in the immediate vicinity of the project in question. (*See* n 4 — "Kind of Project and Location.") The court in *Holmes* expressly stated that such evidence was among the factors to be considered. Accordingly, the trial court did not err in considering that fact. The good faith of intervenor is not questioned.

Affirmed.