Argued and submitted June 23, affirmed as modified and remanded for further
proceedings September 15, 1982

MILCREST CORPORATION,
*Respondent,*
*v.*
CLACKAMAS COUNTY et al,
*Defendants,*
PORTLAND METROPOLITAN AREA
LOCAL GOVERNMENT BOUNDARY
COMMISSION et al,
*Appellants.*

(No. 79-11-41, CA A22184)

650 P2d 963

Frank W. Ostrander, Jr., Assistant Attorney General, Portland, argued the cause for appellant Portland Metropolitan Area Local Government Boundary Commission. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Robert E. Stacey, Jr., Portland, argued the cause for appellants Oregon Land Use Project, Inc. and Metropolitan Service District. With him on the briefs was Michael A. Holstun, Portland.

James A. Cox, Lake Oswego, and David J. Buono, Portland, argued the cause for respondent. On the brief were David J. Buono and Lindstedt & Buono, P.C., Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This is a declaratory judgment action in which defendants[1] appeal from the trial court's decree that plaintiff has a vested right to proceed with a 660-acre planned unit development (PUD). The PUD was approved by Clackamas County before the county adopted its comprehensive plan and does not conform with the plan. We modify the trial court's decree and affirm it as modified.[2]

In January, 1969, the county planning commission approved plaintiff's application for a PUD on a 440-acre site owned by plaintiff. The project was to include approximately 1000 living units, a dam, a lake, a nine-hole golf course and commercial and support facilities. In October, 1969, the county approved preliminary plats for the two subdivisions comprising the PUD. The conditions the county had imposed when it approved the preliminary plats were satisfied by the end of the year, and a final plat for one of the subdivisions was filed in December.

During 1969 and 1970, partly in response to suggestions by county planning personnel, plaintiff decided to expand the original PUD. Plaintiff therefore acquired options to purchase or contract interests in 220 acres of land adjoining the original 440-acre site. The 220 acres consisted of parcels under five separate ownerships. In August, 1970, plaintiff submitted a revised PUD application for the entire 660-acre tract. The revised project was substantially similar to the original one in its details. The most notable difference was that the number of dwelling units was increased to 1,573. The county approved the application and, later, approved the preliminary plat for the additional 220-acre area. The approval was subject to a number of conditions, including a requirement that the final plat be recorded within one year after the approval of the preliminary plat. The final plat has not been recorded, but

---

[1] The appealing defendants are Portland Metropolitan Area Local Government Boundary Commission, Metropolitan Service District and Oregon Land Use Project, Inc. In the trial court, Clackamas County and a number of individuals were also defendants. Except where otherwise noted, the term "defendants" in this opinion refers to the appellants. Where relevant, the term "plaintiff" as used here includes plaintiff's predecessors.

[2] Our review is *de novo. See Webber v. Clackamas County,* 42 Or App 151, 153, n 1, 600 P2d 448, *rev den* 288 Or 81 (1979).

plaintiff has made and the county has approved timely applications to extend the time for its recording.

Between 1969 and August, 1974, when the county adopted its comprehensive plan, plaintiff completed or substantially completed construction of the dam and the lake bed, filling of the lake, and other design and developmental work. Plaintiff had made expenditures for design, engineering and construction that exceeded $600,000 by the time the comprehensive plan was adopted. Plaintiff's total investment in the project as of that time exceeded one million dollars.

Beginning in late 1971 or early 1972, plaintiff encountered problems in obtaining governmental approvals necessary for further development. That, together with national economic conditions, resulted in financial problems for plaintiff, which in turn led to plaintiff's loss of its options and interests in the 220 acres that were added to the PUD by the 1970 revision. Plaintiff never acquired title to any of the 220 acres, and it has no remaining contractual rights in that area.

The trial court decreed

"* * * that there exists a vested right to develop the 660 acres of land described in Exhibits A and B attached hereto, in accordance with the approved site development plan and revised site development plan, and that said vested right shall run with the land."

In addition, the court ruled

"* * * that defendants Clackamas County, Portland Metropolitan Area Local Govern. Boundary Commission and Metropolitan Service District are enjoined from denying or opposing the formation of the Clackamas County Sanitary Service District, are enjoined from interfering with the orderly development of the Clackamas County Sanitary Service District and further are enjoined from otherwise interfering with the exercise of the vested right to develop said land as the Beaver Lake Planned Unit Development pursuant to the prior approvals * * *."

■ Although not raised by the parties, the initial question is whether the controversy is a justiciable one in its present posture. *See Brown v. Oregon State Bar,* 293 Or 446, 648 P2d 1289 (1982). Clackamas County is not a party

to the appeal.[3] *See* note 1, *supra.* Therefore, arguably, the county would be bound by the trial court's decree regardless of any decision we render. The county's 1969 and 1970 actions are the source of the nonconforming use in which plaintiff claims vested rights. The *final* action necessary to enable plaintiff to consummate the use—recognition that the conditions precedent to recording of the final plat have been satisfied—is for the county to take. It appears, however, that action by at least one of the appealing defendants is necessary in order for plaintiff to satisfy the conditions. The formation of a county service district to operate the sewage treatment plant for the project must be approved by defendant Boundary Commission. In February, 1979, the Boundary Commission denied approval for the formation of a service district. We conclude that there is an actual controversy between plaintiff and one or more of the appealing defendants, and we turn to the merits.

■ Defendants challenge the trial court's findings to the effect that plaintiff incurred substantial expenses toward completion of the project, that the project is compatible with the surrounding area and that there is no available and conforming alternative use of the property from which plaintiff can obtain a reasonable return on its investment. We agree with the trial court that plaintiff substantially commenced the project, made substantial expenditures, acted in good faith and cannot use the development that has taken place for conforming alternative uses from which plaintiff can obtain a reasonable economic return. We therefore agree that plaintiff has acquired a vested right in a nonconforming use. *See Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973); *Eklund v. Clackamas County,* 36 Or App 73, 583 P2d 567 (1978).

■ ·The questions defendants raise requiring more extensive discussion are: (1) *What* use did plaintiff acquire vested rights in and (2) has that use been abandoned? Specifically, defendants argue that plaintiff "abandoned" the 220 acres added to the original PUD in 1970 and that the 660-acre revised PUD was approved in lieu of the original 440-acre project and differed in substance from it,

---

[3] The county also appears to have agreed with plaintiff's contentions in the trial proceedings.

principally in that the number of living units was substantially increased. Defendants contend that the 220 acres "constituted integral parts" of the only PUD which now exists or in which vested rights could now be claimed; that "[p]laintiff's abandonment of integral portions of the 1970 approval left it without an approval on which to rely"; and that "[t]he 440-acre project or plan was essentially abandoned and never was raised again until it was conveniently resurrected in the course of this proceeding in an attempt to fall back on it."

Plaintiff responds that the "vested right to develop the * * * PUD was clearly established prior to the loss of the 220 acres"; that plaintiff "never intended to abandon the project or abandon the 220 acres as part of the project";[4] and that vested rights run with the land and are not "dependent upon ownership." The trial court agreed and concluded that there had been no abandonment of the right to develop the 660 acres and that the right "runs with the entire 660 acres of the subject land."

In our view, the question is not whether plaintiff *abandoned* vested rights to develop the 220 acres but whether the vested rights plaintiff *acquired* ever included the 220 acres. We conclude that they did not. The reasons discussed earlier for finding plaintiff to have acquired vested rights in *some* use are singularly inapplicable to the 220 acres. The vast preponderance of plaintiff's design and engineering expenditures, and virtually all the construction expenditures, were exclusively referable to the original 440 acres. Correspondingly, there was no substantial commencement of construction on the 220-acre addition. Alternative uses of the 220 acres, consistent with the county's comprehensive plan, remain available; indeed, there has been no cognizable development of the 220 acres that is consistent with the *nonconforming* use. Finally, plaintiff can claim no

---

[4] Plaintiff states:

"* * * In fact, the owners of the 220 acres subsequently signed a writing for plaintiff to submit to the County Board of Commissioners acknowledging their consent to the continuation of the project."

The owners did not acquire any vested right in the nonconforming use under these facts.

entitlement to a reasonable return on its investment in property in which it has no remaining interest.

It is true that, beyond a certain point in time, plaintiff perceived the 660 acres as a unitary project and all preparations and development anywhere in the 660 acre area as furthering completion of the whole project. However, it is also true that little or nothing related to the PUD actually occurred on the 220 acres before the comprehensive plan was adopted or before plaintiff lost its interest in that area. As things now stand, nothing connected with the PUD can occur there.

■ We conclude that plaintiff proved a vested right to develop only the original 440 acres. The question remains whether plaintiff abandoned that right by applying for and obtaining approval of the revised PUD. We conclude that it did not. Assuming arguendo that plaintiff could be found to have abandoned the vested rights in its use of the 440 acres if there were substantial differences between the projects approved in 1969 and 1970, we disagree with defendants that there were such differences. The 50 percent increase in dwelling units under the revised PUD was not a substantial change from the original project in light of the fact that the territory included in the revised project was 50 percent greater. As plaintiff points out, the general plan concept, density factor and other aspects of the 1969 and 1970 projects were substantially the same.

Defendants' other arguments in support of their abandonment theory are unpersuasive. For example, they point to the fact that the county's action approving the revised project was recorded as adopting the "current plan and proposal *in lieu of* the previously adopted plan." (Emphasis added.) That argument is largely semantic. The record shows clearly that both plaintiff and the county regarded the 1970 application and approval as an expansion and not as a replacement of the PUD approved the previous year.

We therefore modify the trial court's decree to declare that plaintiff has vested rights in the nonconforming development only of the original 440 acres. The decree must be modified in another respect. As noted earlier, the trial court's decree declared the existence of a vested right

and enjoined defendants from taking certain actions. Defendants do not specifically challenge the injunction portion of the decree. We are nevertheless unable to affirm the injunction.

■ The relief given exceeded the trial court's authority. Although stated in the negative, the injunction is in effect mandatory and directs governmental bodies to exercise their powers in a particular manner. The mandatory injunction would require the governmental bodies to take certain actions rather than directing only that they not refuse to take those actions on grounds inconsistent with the existence of plaintiff's nonconforming use (*e.g.,* that the use violates *current* plan or zoning designations). We also note that the approval of formation of a service district by the Boundary Commission may not be comparable, for purposes of appropriate injunctive relief in a vested rights case, to a city's or county's issuance of a permit to proceed with an established nonconforming use. We therefore vacate the injunction and instruct the trial court to reconsider on remand what, if any, injunctive relief is appropriate here.[5]

Decree modified to declare that plaintiff has vested rights to proceed with the nonconforming use on only the 440 acres included in the 1969 PUD application; injunction vacated; affirmed as modified and remanded for further proceedings and for entry of an amended decree consistent with this opinion.

---

[5] The parties have not addressed that issue in their arguments in this court.