Argued and submitted July 2, reversed and remanded December 15, 2010

Steve DAVIS,
*Petitioner-Appellant,*

*v.*

JEFFERSON COUNTY,
*Respondent-Respondent,*

*and*

Connie SHOWN,
as Personal Representative of
the Estate of Gordon Shown,
*Intervenor-Respondent-Respondent.*

Jefferson County Circuit Court
08CV0042; A141921

245 P3d 665

Jannett Wilson argued the cause for appellant. With her on the briefs was Western Environmental Law Center.

Edward P. Fitch argued the cause for respondent Connie Shown. With him on the brief was Bryant, Emerson & Fitch, LLP.

No appearance for respondent Jefferson County.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This case arises under Measure 49, a law adopted by the voters in 2007. Measure 49 qualifies property for special zoning allowances if, among other things, the right to develop the property vested under the common law. The county determined that claimant's right to continue development of a residential subdivision had vested and that the subdivision was eligible for the zoning allowance provided under Measure 49.[1] Petitioner petitioned for review of the county decision in circuit court. The reviewing court entered a judgment that affirmed the county decision and dismissed petitioner's writ of review.

Petitioner appeals that judgment and contends that the court erred in concluding that the county properly construed the applicable law in its vesting decision. Claimant cross-assigns error, asserting that the reviewing court erred in not dismissing the petition for writ of review because of delay in its service on the county. We conclude that the court did not err in failing to dismiss the petition on that ground and affirm on the cross-assignment of error without further discussion. For the reasons stated below, we further determine that the reviewing court erred in concluding that the county properly construed Measure 49 in its vesting decision. Accordingly, we reverse and remand for further proceedings.

Many of the issues in this appeal were decided in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010) (*Friends*). That opinion more fully describes the legal setting for the case. Briefly put, Measure 37 was adopted by the voters in 2004 and codified at ORS 197.352 (2005). The law was subsequently amended, Or Laws 2007, ch 424, § 4, and, in 2007, it was renumbered as ORS 195.305. Measure 37 required state and local governments to provide "just compensation" to a property owner when a governmental entity enacted or enforced a post-acquisition land use regulation that restricted the use of the property in ways that reduced its fair market value. *Former* ORS 197.352(1). "Just compensation" could be provided to a qualified claimant in one of two ways: either by paying the claimant the amount

---

[1] Claimant Gordon Shown died after petitioner filed his petition for a writ of review. His estate intervened in the proceedings below and defends the judgment under appeal. We refer to the decedent and his estate as "claimant."

of the reduction of the property's value, *former* ORS 197.352(2), or by deciding to "modify, remove, or not to apply the land use regulation * * * to allow the owner to use the property for a use permitted at the time the owner acquired the property," *former* ORS 197.352(8). In the subsequent adjudication of Measure 37 claims, the option to exempt property from otherwise applicable regulations and allow a specified use became known as a "Measure 37 waiver."

In 2007, the voters adopted Measure 49 to replace Measure 37. Measure 49 limited the available remedies for past and future claims for just compensation for the lost fair market value of property caused by a downzoning. For Measure 37 claims filed on or before June 28, 2007, section 5 of Measure 49 allowed a specified number of residential dwellings and lots to a claimant, depending on the location of the property. Section 5(3) allowed just compensation to Measure 37 claimants

"as provided in * * * [a] waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

The issues in this case concern the meaning and application of section 5(3) of Measure 49.

Claimant acquired an unzoned 67.78-acre parcel of land in Jefferson County. After its acquisition, the county applied exclusive farm use zoning to the parcel as required by state law. The zoning precluded partitioning and residential development of the tract. Claimant sought and obtained Measure 37 waivers of the post-acquisition zoning laws from the county and state. Consistently with those waivers, the county approved claimant's 31-lot tentative subdivision plat on November 8, 2006. The infrastructure for the subdivision was built or bonded and the final plat was recorded on November 2, 2007. By December 6, 2007, claimant had spent $300,655.70 on the subdivision for engineering, planning and legal fees, costs of a bond, and construction costs for roads and utilities.

After the adoption of Measure 49, claimant applied for a vested rights determination from the county. Petitioner

participated in the March 5, 2008, hearing on the application. The board of county commissioners adopted its findings of fact, conclusions of law, and final decision on March 20, 2008. The board concluded that claimant's rights to a 31-lot subdivision had vested. The board determined that claimant's use of the property complied with the waivers, and entered findings on the vested rights factors outlined in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973).[2] In particular, the board concluded that the "cost of individual residences should not be included in total project costs for completion of the project" in determining whether the project expenditures were "substantial" under *Holmes*. In deciding whether the expenditures were substantial based on the total project costs, the board considered only the utility and road construction costs to complete the subdivision. However, the board further found that

> "even if homes were to be included * * * there is sufficient investment in this project to vest it under Oregon common law. The Board finds that the ratio of expenses to be approximately 4%. Although this is less than the 7% found in <u>Clackamas County v. Holmes</u>, the 7% is not a hard and fast rule."

(Underscoring in original.) The board concluded that the expenditures were undertaken in good faith and could not be adapted to use of the property as it is zoned or to the uses allowed by Measure 49.

Petitioner petitioned for review of the county decision under the writ of review statutes, ORS 34.010 to 34.100.[3]

---

[2] In *Holmes*, the Supreme Court set out the following test for determining whether a common-law vested right to develop property exists:

> "The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

265 Or at 198-99 (citations omitted).

[3] Petitioner sought review of the vesting determination under section 16 of Measure 49, now codified at ORS 195.318. ORS 195.318(1) provides, in part:

ORS 34.020 provides, in part, that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors." As relevant here, ORS 34.040(1) allows issuance of the writ when

"an officer or tribunal * * * in the exercise of judicial or quasi-judicial functions appears to have:

"* * * * *

"(c) Made a finding or order not supported by substantial evidence in the whole record; [or]

"(d) Improperly construed the applicable law[.]"

A reviewing court has authority to "affirm, modify, reverse or annul the decision or determination reviewed, and if necessary, * * * to direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision." ORS 34.100.

Petitioner's petition for writ of review asserted that the county misconstrued the applicable law by determining that (1) claimant's "use of the property" under section 5(3) of Measure 49 was residential development, although no building permits for residences had been obtained; (2) the activities and expenditures completed by the date that Measure 49 was adopted were sufficient to vest the residential uses contemplated by the waivers; and (3) the activities and expenditures completed subsequent to the adoption of Measure 49 were undertaken in good faith and can be considered in the vesting calculus.

---

"A person that is adversely affected by a final determination of a public entity under ORS 195.310 to 195.314[, statutes providing for prospective compensation claims,] or sections 5 to 11, chapter 424, Oregon Laws 2007, * * * may obtain judicial review of that determination under ORS 34.010 to 34.100, if the determination is made by * * * a county[.]"

ORS 195.318(3) further provides:

"Notwithstanding subsection (1) of this section, judicial review of a final determination under ORS 195.305 or 195.310 to 195.314 or sections 5 to 11, chapter 424, Oregon Laws 2007, * * * is:

"(a) Limited to the evidence in the record of the public entity at the time of its final determination.

"(b) Available only for issues that are raised before the public entity with sufficient specificity to afford the public entity an opportunity to respond."

The reviewing court affirmed the county's vesting determination and dismissed the writ of review.[4] The court announced its reasoning in a letter opinion:

"The question presented is whether [County] improperly construed the applicable law and whether there are sufficient findings in the record for the County's decision. I find the County properly found [claimant's] development right has vested and there are sufficient findings in the record to support County's decision.

"* * * * *

"* * * Whether the work is sufficiently substantially to create a vested right under *Holmes* and its progeny we look at the amount of work, whether the work is inconsistent with the allowed use (farming), and is not merely determined on a ratio of the expenditures and total costs of the project. I find that the amount of work is more than mere contemplation, is inconsistent with farming, and is substantial."

The court finally determined that the county was correct in considering all of the expenditures before December 6, 2007, in making the vesting decision, so "that [claimant] acted in good faith right up to the implementation date of Measure 49 and [his] Measure 37 claim vested."

On appeal, petitioner contends that the court erred in (1) "affirming vesting of a subdivision, rather than a use," reiterating his assertion that vesting of residential uses cannot occur until construction commenced on the homes; (2) affirming how the county applied the project completion factor (without any costs of the homes) in the *Holmes* analysis; (3) concluding that the county was correct in finding that

---

[4] The dismissal of the writ of review was not technically correct. The writ of review had already issued and required the county to return a record of its decision-making to the reviewing court. *See* ORS 34.060 (a writ of review is "directed to the court, officer, or tribunal whose decision or determination is sought to be reviewed, * * * requiring return of the writ to the circuit court, with a certified copy of the record or proceedings in question annexed thereto"). On that review, the court may grant the relief outlined in ORS 34.100. We treat the judgment under review as affirming the vesting determination.

claimant acted in good faith in making expenditures after the referral of Measure 49 to the voters; and (4) concluding that the county's adaptability findings were supported by substantial evidence in the record.

On appeal, we review the trial court's affirmance of the county's determination for errors of law; that is, we ask whether the trial court correctly applied ORS 34.040(1)(c) and (d). *See Salosha, Inc. v. Lane County*, 201 Or App 138, 142, 117 P3d 1047 (2005) (discussing the standard of review applicable to writs sought under ORS 34.040(1)(c) (lack of substantial evidence)). In particular, given petitioner's contentions, our task is to ascertain whether the court erred in its construction of the term "use of the property" in section 5(3) of Measure 49 in applying the proper standard of review to the county's justification that the use complied with the waivers, and in the court's assessment of whether the "county's failure to consider or give proper weight to [a specific vested rights determination] factor might have affected the vested rights determination." *See Union Oil Co. v. Board of Co. Comm. of Clack. Co.*, 81 Or App 1, 8, 724 P2d 341 (1986) (stating that standard for reviewing LUBA opinion that, in turn, reviewed local government application of vested rights standards); *see also Cook v. Clackamas County*, 50 Or App 75, 622 P2d 1107, *rev den*, 290 Or 853 (1981) (review obtained of the weight given to and manner of application of vested rights factors in an appeal of a judgment rendered in an action at law).

For the most part, petitioner's contentions on appeal were decided in *Friends*. First, we decided in *Friends* that section 5(3) of Measure 49 required proof of two things in making a vested rights determination:

"The plain text of [section 5(3)] provides that a claimant is 'entitled to just compensation as provided in * * * [a] waiver issued' before December 6, 2007. However, the 'extent' of that entitlement is limited in two separate ways: (1) by requiring that the claimant use the property consistently with the waiver and not for some other kind or degree of use; and (2) by whether, and the extent to which, the use described in the waiver has vested under the common law. Put another way, the use must not only 'vest' under the

common law; the text imposes a separate requirement that the property be used as described in the waiver."

237 Or App at 166-67.

■ We decided that "use" in this regard is "the employment of land for a particular purpose" or, in the context of a requested vested right to develop a subdivision, "the actual employment of land for a residential purpose." *Id.* at 167. Because section 5(3) requires that the "use of the property" comply with the waivers, we concluded that the "construction of infrastructure that is consistent with the amount and degree of the development allowed by the waiver and sought through the vesting decision is a 'use of the property [that] complies with the waiver.'" *Id.* at 168. That same analysis applies to petitioner's claim that the construction of roads and utilities in the present case is insufficient to establish a "use" of the property for residential development. The reviewing court did not err in affirming the county's decision in that regard.

■ Second, we rejected in *Friends* petitioner's contention that expenditures made after the referral of Measure 49 to the voters were not made in good faith and should not be used to justify the creation of a vested right:

"Friends argues that claimant acted in bad faith in making expenditures (1) after June 15, 2007, with actual or imputed knowledge of the referral of Measure 49 or (2) after the measure's adoption on November 6, 2007, but before its effective date on December 6, 2007. Friends relies on the description in *Holmes* of the 'good faith' vested right factor as going to 'whether or not [the claimant] had notice of any proposed zoning or amendatory zoning before starting [claimant's] improvements.' 265 Or at 198. The difficulty with Friends' analysis is that Measure 49, the proposed amendatory zoning, makes uses that have vested as of December 6, 2007, lawful. Section 5(3) allows the continuance of uses that have 'vested * * * on the effective date of this 2007 Act.' In other words, the expenditures at issue in this case were made in order to establish an allowed use. An interpretation of section 5(3) that takes into account only those landowner's investments made before July 15, 2007 (the referral date for Measure 49) or November 6, 2007 (the adoption date for Measure 49) is plainly inconsistent with

the express direction of section 5(3) that the vesting calculation be made 'on the effective date of this 2007 Act' and not earlier. The timing of expenditures made before that date is irrelevant to an assessment of the claimant's good faith in particular or to the determination of the accrual of vested rights in general."

237 Or App at 176 (footnote omitted). Thus, the reviewing court did not err in affirming the county's consideration of post-referral expenditures in the vesting determination.

◼    The reviewing court affirmed all of the county's findings, including the finding that "[t]he engineering work, legal work and improvements are inconsistent with either the allowed uses under the EFU A-1 zone or the two parcels that would be allowed under Measure 49." In the proceedings below, petitioner argued that that finding was not supported by substantial evidence in the whole record under ORS 34.040(1)(c). The reviewing court did not address that argument, concluding only that "the amount of work is more than mere contemplation, is inconsistent with farming, and is substantial." On appeal, petitioner complains that the reviewing court did not determine the substantiality of the evidence for that finding.

We review the circuit court's application of the substantial evidence standard for whether the court applied the correct legal test for substantial evidence. *Younger v. City of Portland*, 305 Or 346, 358, 752 P2d 262 (1988) (stating that standard of review for analogous review of LUBA order reviewing a local government decision for whether it is supported by "substantial evidence in the whole record"). The reviewing court did not explain why it affirmed the challenged finding. We cannot determine from this record if the court reviewed that particular finding at all, much less if it applied the correct legal standard in doing so. A remand is necessary to allow the reviewing court to address the evidentiary support for that finding.

◼    Petitioner's final claim is that the reviewing court erred in affirming the county's decision when the county did not consider the extent of the actual project costs, including the costs of home construction, in making the vested right

determination. We agreed with petitioner's contention in *Friends*:

> "In determining whether a claimant meets the separate requirement in section 5(3) of a 'common law vested right,' the *Holmes* factors for determining the existence of a vested right that are otherwise applied through those other parts of section 5(3) (*i.e.*, good faith, expenditures on the waived use, particular timing of expenditures) are less probative as markers of a 'common law vested right' than the factors that remain (*i.e.*, expenditure ratio, cost and location of project) in order to avoid an internal redundancy in the section. Therefore, what becomes *more* material to a section 5(3) determination are the other *Holmes* factors—the expenditure ratio, remaining issues about the adaptability of the investment to otherwise lawful uses under Measure 49, and the kind of project, including its location and costs. The text of section 5(3), then, prompts a more focused inquiry on whether a common-law vested right exists under that section than would be the normal case where none of the *Holmes* factors are predominant. Instead, the text and context of section 5(3) of Measure 49 makes a determination of the nature of the ultimate project (the location, extent, and type of residential development and its costs) and an assessment of the expenditure ratio particularly material to a vested rights decision under the measure."

237 Or App at 177 (citation omitted). Given those conclusions, we added:

> "Thus, the necessary consideration of the expenditure ratio factor involves a comparison of the project-related costs incurred in good faith as of December 6, 2007, with the likely costs of completing the particular development sought to be vested based on construction costs as of December 6, 2007. The appropriate degree of that progress is affected by application of the relevant *Holmes* factors to the facts of the particular case and by a comparison to the ratios used in *Holmes* and subsequent decisions. The failure of the reviewing court to require the county to define the extent and general cost of the project to be vested and to 'consider [and] give proper weight' to the expenditure ratio factor in this way is legal error in this case because that consideration 'might have affected the vested rights determination.' *Union Oil Co.*, 81 Or App at 8."

237 Or App at 178.

The same result obtains here. The county's alternative finding that the project investment was still substantial, even assuming that homes were to be included in the total cost of the project, is speculative. The parties point to no evidence in the local government record of the actual projected construction costs for the homes to be built. Therefore, the reviewing court should have remanded the decision to the county to determine the extent and general cost of the project to be vested and to give proper weight to the resulting expenditure ratio in the totality of the circumstances of this case.

Reversed and remanded.