Argued and submitted June 8, 2010, on respondent Shelley Hudspeth's motion to dismiss filed May 12, appellant's response to motion to dismiss filed June 30, and respondent Shelley Hudspeth's reply to appellant's response to motion to dismiss filed July 7, 2009, motion to dismiss denied; reversed and remanded May 11, appellant's petition for reconsideration filed June 14, and intervenor-respondent's response to appellant's petition for reconsideration filed June 28 allowed by opinion July 27, 2011

See 244 Or App 572, 261 P3d 1264 (2011)

## STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Plaintiff-Appellant,*

*v.*

## CROOK COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent,*

*and*

## Shelley HUDSPETH,
*Intervenor-Respondent.*

Crook County Circuit Court
08CV0045; A142004

256 P3d 178

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Edward P. Fitch argued the cause for respondent Shelley Hudspeth. With him on the briefs was Bryant, Emerson & Fitch, LLP.

No appearance for respondent Crook County.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner, State of Oregon through the Department of Land Conservation and Development (DLCD), appeals the circuit court's judgment in a writ of review proceeding that affirmed respondent Crook County's[1] determination that respondent Shelley Hudspeth (Hudspeth) has a vested right to complete development of a 59-lot residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004).[2] On appeal, DLCD contends, *inter alia*, that the circuit court misconstrued applicable law in sustaining the county's determination that Hudspeth has a vested right to complete that development because there was inadequate consideration of the expenditure ratio factor (*viz.*, the ratio of expenditures to total project costs). In response, Hudspeth contends that, as to the merits, the circuit court properly determined that, under the circumstances of this case, she had a vested right but that, as a preliminary matter, the appeal must be dismissed because DLCD lacks standing to pursue it. For the reasons explained below, we conclude that (1) DLCD has standing to appeal; and (2) consistently with our decision in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011), the circuit court should have remanded the decision to the county to determine the total project cost and to give proper weight to the

---

[1] Although named as a respondent, Crook County has not appeared on appeal.

[2] We explained the legal context in which this case arose in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 59-60, 246 P3d 56 (2010):

"Ballot Measure 37 (2004) * * * was enacted through the initiative process and codified as *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007). Measure 37 essentially provided that public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. Measure 37, however, was controversial. The potential disruptive effect of Measure 37 development, together with a lack of clarity in Measure 37's provisions, led to calls for a revision of the measure.

"Ultimately, the 2007 Legislative Assembly referred to the voters a substitute statute, Ballot Measure 49, that narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver. The voters approved Measure 49, and it became effective on December 6, 2007."

(Internal quotation marks, citations, and brackets in original omitted; omission in original.)

expenditure ratio in the circumstances of this case. Accordingly, we deny the motion to dismiss and remand the circuit court's judgment.

For purposes of appeal, the following facts are undisputed. Measure 37 waivers from the county and the state allowed for the development of a 59-lot subdivision on Hudspeth's property. Hudspeth obtained tentative approval from the county for a subdivision[3] and expended hundreds of thousands of dollars to develop the property before Measure 49 became effective on December 6, 2007.

Thereafter, Hudspeth applied for a determination from the county that she had a vested right to complete and continue the use described in the Measure 37 waivers.[4] Hudspeth's application indicated that the total project budget was $5,081,946. That figure, however, did *not* include the cost of residences that would ultimately be constructed in the subdivision. DLCD submitted written comments in response to Hudspeth's application that consisted of "guidelines for applying vested right common law in the context of Measure 49" that were developed by DLCD and the Department

---

[3] Hudspeth actually obtained tentative approval for a "planned unit development." Nonetheless, the parties on appeal, generally, refer to the development as a "subdivision." For that reason, throughout this opinion, we use the term "subdivision" as well.

[4] As pertinent here, section 5(3) of Measure 49 provides that a claimant who had filed a Measure 37 claim on or before June 28, 2007, had an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

In *Friends of Yamhill County*, in examining the meaning of the term "common law vested right" as used in section 5(3),

"we surveyed Oregon case law, including the Supreme Court's decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project."

*Kleikamp*, 240 Or App at 60. *See also Friends of Yamhill County*, 237 Or App at 159-65 (surveying Oregon's vested rights case law).

of Justice. According to DLCD, it offered the guidelines "for the county to consider in reviewing this application and request[ed] that it be included in the record."

The county's planning director concluded that Hudspeth had a vested right to complete and continue the use described in the waivers. As pertinent to the issues on appeal, in considering the expenditure ratio factor, the county's planning director determined that Hudspeth "ha[d] spent over $500,000 in 'allowed expenditures' * * *."[5] Further, the planning director determined that "the cost of individual residences shall not be included in the total project costs for completion for the subdivision and that those costs are relative to future land use approvals for site plan review and building permits." Accordingly, the director calculated the ratio of allowed expenditures (*i.e.*, $502,300) to total project cost (*i.e.*, $5,081,946) to be 9.88 percent.

Pursuant to a county procedure, DLCD appealed the planning director's determination to the Crook County Court. As pertinent here, and as identified in its notice of appeal to the county court, DLCD's primary contention was that "[t]he director should have included the cost of individual residences in total project costs for the use that applicant seeks to vest."

In response, Hudspeth noted that "[t]he ratio test is one factor of many to be considered in the vesting determination" and that "the case law does not require that the total

---

[5] The planning director excluded over $300,000 in expenses for (1) attorney, application, and administrative fees; (2) work related to uses that would be allowed under current zoning; (3) interest; and (4) costs incurred by individuals other than Hudspeth. In affirming the county's decision, the circuit court determined that, although the county had allowed "expenditures of $502,300.00," it should have included additional expenses that totaled "approximately $395,000.00." Nevertheless, because the court "conclude[d] that $502,300.00 represent[ed] a substantial investment, and certainly [a] sufficient investment to constitute vesting in this case, it [would] not be necessary to remand the case to the county for additional findings."

On appeal, the parties make different assertions as to whether the numerator in the expenditure ratio is approximately $500,000, as determined by the county, or approximately $900,000, as noted by the circuit court. We need not resolve that issue because it was not assigned as error on appeal. *See* ORAP 5.45(1) (providing, in part, that "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule").

cost of building the homes be considered in the ratio test," particularly where, as here, she "[did] not intend to build homes, but rather intend[ed] to sell buildable lots." Alternatively, Hudspeth contends that, if the cost of the residences is included in the denominator of the expenditure ratio, any determination of that cost would be purely speculative. Nevertheless, Hudspeth asserts that "[t]he cost of homes could be as low as $100,000 (double wide manufactured homes)" and that, even assuming that the cost to complete each of the 59 residences was as much as $200,000, the resulting expenditure ratio demonstrated that "this development [had] vested."

The county court affirmed the planning director's decision. Although the county court generally incorporated the planning director's findings and conclusions into its order, it specifically stated that

> "[t]he total cost of the project need not include the costs of the homes which is determined by this Court to be too speculative and there is no direct authority on point requiring this Court to include the costs of the homes for this project; however, the Court also finds that even with the cost of homes included in the calculation, with a minimum cost of $100,000 per dwelling, there is a sufficient substantial investment directly related to the establishment of the residential subdivision, which was made in good faith, to vest this development[.]"

DLCD sought review of the county court's order in the circuit court.[6] As pertinent to the dispositive issue in this appeal, the circuit court issued a letter opinion in which it concluded that "a specific determination of the denominator in the ratio of investment to total cost of development is not required in every case." Further, the court reasoned that, "[e]ven if a specific ratio is required by Oregon law, which I believe it is not, the county alternatively found that, if the cost of homes is included in the calculation at $100,000 per dwelling,[7] there was sufficient and substantial investment to vest the development."

---

[6] In that proceeding, the county appeared as respondent, and the circuit court allowed Hudspeth to intervene.

[7] A figure that the court acknowledged was "purely speculative."

Consistently with its letter opinion, the court entered a judgment, sustaining the local government's determination that Hudspeth had a vested right to complete the development of her property and dismissing DLCD's writ of review. DLCD appeals.

Thereafter, Hudspeth filed a motion to dismiss, contending that "DLCD does not have statutory authority to appeal the Circuit Court's decision." In response, DLCD noted that the issue concerning its authority had not been raised below and appeared to question whether that issue was the proper subject of a motion to dismiss. Nevertheless, invoking the then-extant 2009 version of ORS 197.090(2)(a), DCLD contended primarily that it had authority to participate in the proceedings in this case, which concerned a vested right that "[arose] from a Measure 37 order issued by DLCD." That statute provided:

> "Subject to local government requirements and the provisions of ORS 197.830 to 197.845, the director may participate in and seek review of a land use decision, expedited land division or limited land use decision involving the goals, acknowledged comprehensive plan or land use regulation or other matter within the statutory authority of the department or commission under ORS chapters 195, 196 and 197. The director shall report to the commission on each case in which the department participates and on the positions taken by the director in each case."

In granting Hudspeth's motion to dismiss, the Appellate Commissioner reasoned, in part, that ORS 197.090(2)(a) (2009)

> "[was] susceptible to two different readings. It can be read to provide that DLCD may participate in and seek review of a land use decision, an expedited land division, or a limited land use decision, provided that it involves one or more of these matters: a statewide land use goal, an acknowledged comprehensive plan, a land use regulation, or any other matter within the statutory authority of DLCD or the [Land Conservation and Development Commission (LCDC)] under ORS chapters 195, 196 and 197. Alternatively, it can be read to provide that DLCD may participate in and seek review of (1) a land use decision, an expedited land division, or a limited land use decision that involves statewide land

use goals, an acknowledged comprehensive plan, or a land use regulation, or (2) any other matter within the statutory authority of DLCD or the Commission under ORS chapters 195, 196 and 197.

"Whether a property owner may develop property in a manner that otherwise violates state land use laws on the basis of a claimed vested right in a Ballot Measure 37 waiver is a 'matter within the statutory authority of the department or Commission under ORS chapters 195, 196 and 197.' It follows that, if ORS 197.090(2)(a) has the second meaning described above, DLCD had standing to initiate the writ of review proceeding and to appeal from the circuit court's disposition of that matter. However, the court determines that the correct reading of the statute is the first alternative described above."

Ultimately, the commissioner concluded that "DLCD has authority to participate in and seek review of a matter if, at a minimum, the matter is a land use decision, an expedited land division, or a limited land use decision" and that, because a vested rights determination is not one of those types of decisions, "DLCD lack[ed] standing to appeal the judgment."

DLCD petitioned for reconsideration of the commissioner's order. In response, this court's Motions Department issued an order allowing reconsideration, vacating the commissioner's order, and "defer[ring] a ruling on Hudspeth's motion to dismiss to the department that decides the appeal on its merits."

Thereafter, as the parties were in the process of completing their appellate briefs, the legislature amended ORS 197.090(2)(a), *see* Or Laws 2010, ch 8, § 8 (Spec Sess), in a manner that completely undercut the Appellate Commissioner's conclusion that DLCD had authority to participate in and seek review of only land use decisions, limited land use decisions, or expedited land divisions.[8] Significantly, one purpose of the amendment was to "[c]larif[y]" DLCD's "standing in litigation." Staff Measure Summary, Senate Committee on Judiciary, SB 1049, Feb 8, 2010.[9]

[8] The text of the 2010 version of the statute is set out below at 242 Or App at 589.

[9] *See, e.g., State v. Jansen*, 198 Or App 260, 265 n 3, 108 P3d 92 (2005) (staff measure summaries considered in determining legislative intent); *cf. State v. Kelly*,

Shortly after the amendment became effective, the parties completed their appellate briefs in which they addressed the effect of the amendment on the pending motion to dismiss.[10]

■ Because it implicates our jurisdiction, we begin by addressing Hudspeth's contention that DLCD lacks standing to appeal because a common-law vesting decision is not a "matter within the statutory authority of [DLCD] * * * under ORS chapter 195, 196, and 197" as required by ORS 197.090(2)(a)(B). Specifically, Hudspeth contends that "[t]here is no reference in either Measure 49 or ORS Chapter 195 which provides any statutory authority to [DLCD] or [LCDC] to review, issue decisions in, participate in, or appeal common law vesting decisions."

Conversely, DLCD contends that the 2010 amendments to ORS 197.090(2)(a) demonstrate that it has standing to bring this appeal. Specifically, DLCD asserts that, pursuant to ORS 197.090(2)(a)(B), "[i]mplementation of Measure 37 and Measure 49 unquestionably fall within [its] statutory authority * * * under ORS chapters 195 (where Measure 49 is codified), 196 and 197 (where Measure 37 is codified)[,]" particularly where, as here, it was the entity that granted one of the waivers that is at the heart of the vesting determination in this case.

As we understand it, Hudspeth's motion to dismiss for lack of standing is predicated on her contention that DLCD lacks statutory authority to participate in a proceeding concerning a vesting determination and to seek review of that determination. Even assuming that DLCD must have the requisite statutory authority in order to have standing to appeal,[11] DLCD had such authority in this case.

As previously indicated, 242 Or App at 587-88, 588 n 10, the scope of DLCD's authority to participate in and seek review of various decisions and matters is governed by ORS

_____

229 Or App 461, 465-68, 211 P3d 932, *rev den*, 347 Or 446 (2009) (discussing sources and use of legislative history).

[10] *See* Or Laws 2010, ch 8, § 10 (Spec Sess) ("The amendments to ORS 197.090 by section 8 of this 2010 Act apply before, on or after the effective date [February 25, 2010,] of this 2010 Act.").

[11] Our analysis and disposition imply no view as to the correctness of that proposition.

197.090(2)(a) as amended by the legislature in 2010. That statute now provides:

> "Subject to local government requirements and the provisions of ORS 197.830 to 197.845, the director may participate in and seek review of:
>
> "(A) A land use decision, expedited land division or limited land use decision involving the goals or involving an acknowledged comprehensive plan and land use regulations implementing the plan; or
>
> "(B) Any other matter within the statutory authority of the department or commission under ORS chapters 195, 196 and 197."

By breaking the text of the statute into two distinct subparagraphs, the legislature has unambiguously expressed its intention that DLCD has authority to participate in and seek review of (1) particular decisions concerning land use, ORS 197.090(2)(a)(A), and (2) "[a]*ny other matter* within the statutory authority" of DLCD or LCDC, ORS 197.090(2)(a)(B) (emphasis added).

As the parties have correctly noted, this case does not involve a land use decision as contemplated in ORS 197.090(2)(a)(A).[12] *See* ORS 195.305(7) ("A decision by a public entity that an owner qualifies for just compensation under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * and a decision by a public entity on the nature and extent of that compensation are not land use decisions."). Accordingly, the issue reduces to whether this case involves "[a]ny other matter within [DLCD's] statutory authority" pursuant to

---

[12] The fact that this case does not involve a land use decision as contemplated by ORS 197.090(2)(a)(A) forecloses Hudspeth's contention that DLCD lacked authority to seek review in this case because it did not obtain approval from LCDC as provided in ORS 197.090(2)(c) and (d). *See* ORS 197.090(2)(c) (providing, in part, that "[i]f a meeting of [LCDC] is scheduled prior to the close of the period for seeking review of a *land use decision, expedited land division or limited land use decision*, [DLCD] shall obtain formal approval from [LCDC] prior to seeking review of the decision" (emphasis added)); ORS 197.090(2)(d) ("If a meeting of [LCDC] is not scheduled prior to the close of the period for seeking review of a *land use decision, expedited land division or limited land use decision*, at the next [LCDC] meeting [DLCD] shall report to [LCDC] on each case for which [DLCD] has sought review. [DLCD] shall request formal approval to proceed with each appeal. * * * If [LCDC] does not formally approve an appeal, [DLCD] shall file a motion with the appropriate tribunal to dismiss the appeal." (Emphasis added.)).

ORS 197.090(2)(a)(B). Resolution of that issue, in turn, requires an understanding of DLCD's statutory authority concerning the Measure 37 waiver that it issued to Hudspeth.

As the Supreme Court explained in *Corey v. DLCD*, 344 Or 457, 460, 184 P3d 1109 (2008), Measure 37

"required public entities that enact and enforce land use regulations to pay a landowner whose property is affected by any such regulations 'just compensation,' which the statute generally defined as an amount equal to the 'reduction in the fair market value of the affected property interest' resulting from enforcement of any land use regulation enacted after the date of acquisition of the property by the landowner or a family member of the landowner. [*Former*] ORS 197.352(1) - (3) * * *. The provision authorized affected landowners to make a 'written demand for compensation' to the regulating entity, [*former*] ORS 197.352(5)[.]"

Alternatively, the public entity had the option of waiving the applicable land use regulations instead of paying compensation. *Former* ORS 197.352(8).

As specifically noted in DCLD's Measure 37 waiver in this case, under the then applicable administrative rules, Hudspeth's claim was referred to DLCD "as the regulating entity." Pursuant to OAR 125-145-0020(12) (Mar 13, 2006),[13] a "regulating entity" is "an Agency that has enacted or enforced, or has authority to remove, modify or not to apply, the Land Use Regulation(s) identified in the Claim." Ultimately, according to its terms, "the Director of the DLCD [issued the waiver] as a final order of DLCD and [LCDC] under ORS 197.352, OAR 660-002-0010(8), and OAR 125, division 145[.]"

Accordingly, DLCD's Measure 37 waiver—one of the waivers that is at the heart of the vesting proceeding in this case—was clearly a matter within its statutory authority. It

---

[13] OAR 125-145-0020(12) (Mar 13, 2006) was a temporary rule that was effective when the waiver in this case was issued. It was one of a series of temporary rules that established the procedures for filing and reviewing Measure 37 claims against the State of Oregon. *See* OAR 125-145-0010 (Mar 13, 2006) ("The purpose of OAR chapter 125, division 145, is to establish procedures for filing and reviewing Claims against the State of Oregon under Measure 37.").

follows that, because that waiver was a "matter within [DLCD's] statutory authority," DLCD may "participate in and seek review of" proceedings concerning that waiver, including a proceeding to determine whether Hudspeth had a vested right to complete and continue the use described therein. ORS 197.090(2)(a).

As previously noted, DLCD did participate in the local proceedings. 242 Or App at 584. Specifically, it submitted comments before the planning director and appealed his decision to the county court according to local procedure. That participation gave DLCD standing, pursuant to ORS 195.318, to seek review of the county court's order in the circuit court.[14] Once the circuit court entered its judgment in the writ of review proceeding, DLCD had standing to appeal to this court. *See* ORS 34.100 (providing, in part, that, "[f]rom the judgment of the circuit court on review, an appeal may be taken in like manner and with like effect as from a judgment of a circuit court in an action").

In sum, DLCD had authority to participate in and seek review of the proceeding concerning its Measure 37 waiver and, in light of its participation, had standing to ultimately appeal the circuit court's judgment to this court. Accordingly, we deny Hudspeth's motion to dismiss and proceed to the merits.

■     In that regard, DLCD contends that the circuit court erred in sustaining the county court's determination that Hudspeth has a vested right to complete the residential development. In support of that contention, DLCD reiterates that the circuit court erred in concluding that "the county was not required to take into account the cost of building houses" when it determined the denominator of the expenditure ratio. Further and relatedly, DLCD contends that, in

---

[14] ORS 195.318 provides, in part, that "[a] person that is adversely affected by a final determination of a public entity under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * may obtain judicial review of that determination under ORS 34.010 to 34.100, if the determination is made by * * * a county[.]" For purposes of ORS 195.318(1), a "person" includes an agency. ORS 197.015(18). Further, a person is "adversely affected" if the person "timely submitted written evidence, arguments or comments to a public entity concerning the determination." ORS 195.318(2)(b).

calculating the denominator, the cost of completion of a residence must be established in the record and cannot be assumed as occurred here.

Conversely, Hudspeth contends that the cost of residences need not be included in the denominator of the expenditure ratio. Alternatively, she acknowledges that "there is no precise number for the cost of homes" in this case, but contends, nevertheless, that she has made a substantial investment even if "an assumed cost of $200,000 [per residence] was used."

We have previously addressed contentions identical or closely similar to those of the parties in this case. In *Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 54, 245 P3d 688 (2010), we summarized the pertinent governing principles:

> "In *Friends of Yamhill County*, we reasoned that, in determining whether a vested right exists in this context, consideration of the expenditure ratio is 'necessary.' 237 Or App at 178. More recently, in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 65-66, [246] P3d [56] (2010), we reiterated the fundamental underpinnings of our directive in *Friends of Yamhill County*. More specifically, we noted that, in all but the most exceptional case, 'a landowner's proof of "substantial expenditures" is the *sine qua non* of a vesting determination' and that, '[f]or vesting purposes, we understand that the concept of "substantial expenditures" * * * requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio.' *Kleikamp*, 240 Or App at 66.

> "Consideration of the expenditure ratio requires, in turn, that a landowner demonstrate the total project cost— that is, 'the *likely costs* of completing the particular development sought to be vested *based on construction costs as of December 6, 2007*.' *Friends of Yamhill County*, 237 Or App at 178 (emphasis added). Significantly, in *Kleikamp*, [240 Or App at 66-67,] we also explained that

>> " 'a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007. * * * Thus, it is incumbent on the property owner to establish

the likely total project cost in relation to the size and character of the structures that the owner contemplated building in compliance with a Measure 37 waiver as of December 6, 2007.' "

(Third brackets and omissions in *Biggerstaff.*) *See also Davis v. Jefferson County*, 239 Or App 564, 573-74, 245 P3d 665 (2010) (concluding that "the reviewing court erred in affirming the county's decision when the county did not consider the extent of the actual project costs, including the costs of home construction, in making the vested right determination"); *id.* at 575 (reasoning that "[t]he county's alternative finding that the project investment was still substantial, even assuming that homes were to be included in the total cost of the project, is speculative").

Consistently with those principles, we conclude, as we did in *Friends of Yamhill County*, *Biggerstaff*, and *Kleikamp*, that the circuit court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances. *Friends of Yamhill County*, 237 Or App at 178. In this case, the county court determined that the denominator need not include the cost of the residences that were sought to be developed and the circuit court determined that it was unnecessary to determine the denominator in the expenditure ratio. Those are legal errors that require reversal.[15]

Motion to dismiss denied; reversed and remanded.

---

[15] Although there is some evidence concerning total project cost, it will be incumbent on the county to determine how, if at all, that evidence bears on an ultimate determination of the denominator in the expenditure ratio in light of the principles explained in *Friends of Yamhill County*, *Biggerstaff*, and *Kleikamp*. In that regard, we note, and reiterate, the circuit court's characterization of an assumed additional cost of "$100,000 per dwelling" as "purely speculative."