Submitted on remand from the Oregon Supreme Court January 24, reversed and remanded March 14, 2012

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Plaintiff-Appellant,*

*v.*

CROOK COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent,*

*and*

Shelley HUDSPETH,
*Intervenor-Respondent.*

Crook County Circuit Court
08CV0045; A142004

274 P3d 260

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General, for appellant.

Edward P. Fitch and Bryant, Emerson & Fitch, LLP, for respondent Shelley Hudspeth.

No appearance for respondent Crook County.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *DLCD v. Crook County*, 242 Or App 580, 256 P3d 178 (*Crook County I*), *adh'd to as modified on recons*, 244 Or App 572, 261 P3d 1264 (2011) (*Crook County II*), and remanded for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011). *DLCD v. Crook County*, 351 Or 318, 267 P3d 158 (2011). The issue on remand is whether the circuit court in a writ of review proceeding properly affirmed respondent Crook County's[1] determination that respondent Shelley Hudspeth (Hudspeth) has a common law vested right to complete a residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004). In *Crook County I*, we concluded that "the circuit court should have remanded the decision to the county to determine the total project cost * * *." 242 Or App at 582-83. As we explain below, because that conclusion is consistent with the Supreme Court's decision in *Friends of Yamhill County*, we again reverse and remand.

A complete recitation of the facts and procedural history of this case is unnecessary in this context. For that reason, we simply adhere to our description in *Crook County I*, 242 Or App at 583-88, as modified in *Crook County II*, 244 Or App at 573, and readopt it here.

As a preliminary matter, we note that, as explained in *Crook County I*, Hudspeth moved to dismiss the appeal, contending that DLCD lacked statutory standing to pursue it. 242 Or App at 586. We concluded that "DLCD had authority to participate in and seek review of the proceeding concerning its Measure 37 waiver and, in light of its participation, had standing to ultimately appeal the circuit court's judgment to this court." *Id.* at 591. For that reason, we denied Hudspeth's motion to dismiss. *Id.* Because the Supreme Court's decision in *Friends of Yamhill County* did not address the issue of DLCD's statutory standing in cases such as this, we adhere to our reasoning in *Crook County I*, 242 Or App at

---

[1] Although named as a respondent, Crook County has not appeared on appeal.

588-91, and readopt it here. Accordingly, we turn to the issue on remand—that is, the propriety of the circuit court's affirmance of the county's determination that Hudspeth had a common law vested right to complete the development of the residential subdivision in compliance with her Measure 37 waivers.

As the Supreme Court explained in *Friends of Yamhill County*, its earlier decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), identified the factors that guide a determination of whether a common law vested right exists in a case such as this. Specifically, in *Holmes*, the Supreme Court stated:

> "The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

*Id.*

In *Friends of Yamhill County*, the Supreme Court explained that, although "all the *Holmes* factors may not apply in a given case and * * * the extent to which they do apply will presumably vary with the circumstances of each case[,]" the expenditure ratio "provides the necessary starting point in analyzing whether a landowner has incurred substantial costs toward completion of the job." 351 Or at 242-43. Ultimately, the court concluded that "the county [in *Friends of Yamhill County*] misapplied the governing law in failing to decide the ratio between the costs that [the landowner] had incurred and the projected cost of constructing the residential subdivision." 351 Or at 245. Specifically, the

court explained that the county's determination of the total project cost—that is, the denominator in the expenditure ratio—was inadequate because it "failed to find the estimated cost of building the homes." *Id.* at 246. Further, the court noted that the county's assumption that each residence might cost $450,000 to construct was an insufficient substitute. In other words, the cost of completion of the residences must be established in the record and cannot be assumed.

In sum, the Supreme Court reiterated that "there is no bright line for determining when an expenditure will be substantial enough to establish a vested right." *Id.* at 248. Ultimately, the court cautioned that the expenditure ratio "is not the sole factor to be considered, nor will it necessarily be the dispositive factor." *Id.* Instead, in determining whether a common law vested right existed,

> "the county needed to find the 'ultimate cost' of completing construction and also the ratio between the costs that [the landowner] had incurred and the cost of the project. Without those findings, the county was in no position to determine whether [the landowner's] expenditures, in light of all the *Holmes* factors, were substantial."

*Id.*

Here, with regard to the expenditure ratio, the county specifically stated that

> "[t]he total cost of the project need not include the costs of the homes which is determined by this Court to be too speculative and there is no direct authority on point requiring this Court to include the costs of the homes for this project; however, the Court also finds that even with the cost of homes included in the calculation, with a minimum cost of $100,000 per dwelling, there is a sufficient substantial investment directly related to the establishment of the residential subdivision, which was made in good faith, to vest this development[.]"

In turn, the circuit court concluded that "a specific determination of the denominator in the ratio of investment to total cost of development is not required in every case." Further, the court reasoned that,

> "[e]ven if a specific ratio is required by Oregon law, which I believe it is not, the county alternatively found that, if the

cost of homes is included in the calculation at $100,000 per dwelling[—a figure that the court acknowledged was 'purely speculative'—]there was sufficient and substantial investment to vest the development."

With regard to the determination of the expenditure ratio, the circumstances of this case—including the ostensible, predicate assumption as to the cost of construction—are materially indistinguishable from those in *Friends of Yamhill County*. Thus, consistently with the reasoning in that case, we reverse and remand.

Reversed and remanded.