STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Petitioner below,*
*and*

OREGON SHORES CONSERVATION COALITION,
Richard Rowland,
and Patricia Rowland,
*Intervenors-Petitioners / Appellants,*

*v.*

CLATSOP COUNTY,
*Respondent-Respondent,*
*and*

James CARLSON
and Virginia Carlson,
*Intervenors-Respondents / Respondents.*

Clatsop County Circuit Court
082578; A144073

281 P3d 613

Courtney B. Johnson and Crag Law Center for appellants.

James D. Zupancic and Neil N. Olsen for respondents James Carlson and Virginia Carlson.

No appearance for respondent Clatsop County.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

**BREWER, J.**

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *DLCD v. Clatsop County*, 244 Or App 33, 260 P3d 575 (2011) (*Clatsop County I*), and remanded for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011) (*Friends II*). *DLCD v. Clatsop County*, 351 Or 403, 271 P3d 115 (2011). The issue on remand is whether the circuit court in a writ of review proceeding properly affirmed respondent Clatsop County's[1] determination that respondent James and Virginia Carlson (the Carlsons) had a common law vested right to complete a residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004). In *Clatsop County I*, we concluded that "the circuit court should have remanded for the county to determine the extent and general cost of the project to be vested"—that is, the total project cost. 244 Or App at 42 (internal quotation marks omitted). As we explain below, because that conclusion is consistent with the Supreme Court's decision in *Friends II*, we again reverse and remand.

A recitation of the facts and procedural history of this case is unnecessary in this context. We adhere to our description in *Clatsop County I. See* 244 Or App at 35-41. As a preliminary matter, we note that respondents, the Carlsons, moved to dismiss the appeal in *Clatsop County I*, contending that DLCD lacked statutory standing to pursue it. We rejected that argument for the reasons set out in *DLCD v. Crook County*, 242 Or App 580, 588-91, 256 P3d 178 (*Crook County I*) (2011), *adh'd to as modified on recons*, 244 Or App 572, 261 P3d 1264 (2011) (*Crook County II*). The Supreme Court vacated and remanded our decision in *Crook County*. *DLCD v. Crook County*, 351 Or 318, 267 P3d 158 (2011) (*Crook County III*). On remand we adhered to our reasoning in *Crook County I* concerning DLCD's statutory standing and readopted it. *DLCD v. Crook County*, 248 Or App 602, 604, 274 P3d 260 (2012) (*Crook County IV*). Consistently with

---

[1] Although named as a respondent, Clatsop County has not appeared on appeal. Also, DLCD has not appeared.

*Crook County IV*, we again reject the Carlsons' contention that DLCD lacked statutory standing.

Accordingly, we turn to the issue on remand, that is, the propriety of the circuit court's affirmance of the county's determination that the Carlsons had a common law vested right to complete the development of their property with their Measure 37 waivers. Here, with regard to the expenditure ratio, the county specifically stated:

"[W]e find that depending upon whether the Measure 37 costs, interest costs, and appeal costs are included in the numerator, the [Carlsons] have expended between $124,000 and $244,000 toward the completion of this project. * * *

"If the costs of home construction do not need to be included in the total project cost, then the denominator of the ratio is between $522,000 and $642,000. Depending on what numerator as described above is included, and incorporating the respective limits of the numerator and denominator, the [Carlsons] have expended somewhere between 23% and 38% of the total project cost. The cost to complete the infrastructure is based on the * * * engineer's estimate provided by the [Carlsons]. We find that estimate to be credible, and no evidence to the contrary was presented.

"If the costs of home construction must be included, then the denominator must be recalculated. We find that the [Carlsons'] qualified expert, who performed a specific market analysis of the project *based on current market conditions*, to be credible. While the County Staff's estimate is certainly one method to value what is otherwise a purely speculative model, it was based on generalized numbers from historic building permits from a broad geographic area. In this case, we find the [Carlsons'] evidence more specific and persuasive than the County Staff's hypothetical. Therefore, the denominator of the ratio, if housing costs are included, is between $1,575,000 and $2,467,000, depending on what costs are allowed in the numerator and whether site built, modular, or manufactured homes are assumed. Depending on the scenario, the [Carlsons] [are] between 5.3% and 14.4% complete with the project, assuming housing costs must be included.

"While we decline to pass judgment on whether housing costs must be included, we find that the [Carlsons] [have]

proved by a preponderance of the evidence that depending upon one's interpretation of the ratio guideline, the project is at least 5.3% complete, and may be up to 38% complete. This range is within the ranges found in prior decisions that weigh in favor of the [Carlsons]. In any event, we believe the guideline is best described as one of substantiality, and the [Carlsons] have made a substantial investment towards completion of the project. We find that this factor weighs in favor of the [Carlsons]."

(Emphasis added.) In turn, the circuit court concluded:

"In any event, the board expressly chose to believe the Carlson[s'] expert regarding building costs and rejected other evidence regarding a more likely building cost. My review of the exhibits indicates houses that will be place[d] on the lots will be high end ones and not modular or mobile homes. * * * Even if building costs must be included in the ratio test, the figures found by the board would still indicate substantial expenditure to satisfy this requirement."

For the reasons set out in *Crook County IV*, 248 Or App at 604-07, we conclude that the board erred in its determination of the expenditure ratio. As we explained in that case, because the board and the circuit court had failed to include the cost of building homes on the property as of the effective date of Measure 49 in their determination of the expenditure ratio, "the determination of the expenditure ratio * * *[,] including the ostensible, predicate assumption as to the cost of construction * * *[,] [was] materially indistinguishable from * * * [*Friends II*]," and a remand to the circuit court was required. *Crook County IV*, 248 Or App at 607. The same problems in the determination of the expenditure ratio are present in this case. Thus, consistently with our reasoning in *Crook County IV* and the Supreme Court's reasoning in *Friends II*, we reverse and remand.

Reversed and remanded.